```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                      00-CR-365(JMR)
                      07-CV-2802 (JMR)
```

United States of America    )
                            )           ORDER
       v.                   )
                            )
Michael Alan Mooney         )

Petitioner, Michael Alan Mooney, seeks to vacate or reduce his sentence invoking 28 U.S.C. § 2255. His motion is denied.

I. Background[1]

Petitioner was employed as a vice president of underwriting by United Healthcare Corporation ("UnitedHealth"). He maintained a margin account at a brokerage firm to invest in his employer's stock.

In February, 1995, UnitedHealth began discussions to acquire The MetraHealth Companies, Inc. ("MetraHealth"), a competitor. Petitioner was part of UnitedHealth's due diligence review team in connection with the proposed acquisition. In this capacity, he spent time in mid-May, 1995, examining MetraHealth's confidential financial records, membership projections, cost data, and underwriting assumptions. UnitedHealth counsel cautioned him, as part of the due diligence team, against trading in UnitedHealth stock during the due diligence period.

---

[1] This matter has been the subject of extensive litigation. The facts in this Order are taken from the evidence presented at trial. For convenience, the trial transcript will be cited as "T." and the sentencing transcript as "S."

The day after he returned from the due diligence review, petitioner sold 20,000 shares of UnitedHealth stock. Approximately one week later, with his stock proceeds in hand, he began purchasing UnitedHealth "call" options. Over the ensuing weeks, he purchased call options assuring him the right to buy 40,000 shares of UnitedHealth stock at $35/share. The MetraHealth acquisition became public on June 21, 1995, whereupon UnitedHealth's stock price rose above $44 5/8 per share. Petitioner subsequently sold his options at a significant profit throughout the summer and fall.

These trades attracted the attention of the United States Securities and Exchange Commission ("SEC"). Aware of petitioner's early "bullish" position in the UnitedHealth call options, the SEC began to investigate the possibility of insider trading. On December 19, 2000, petitioner was indicted on eight counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 1346, and four counts of securities fraud by insider trading, in violation of 15 U.S.C. §§ 78j(b) and 78ff(a). On March 15, 2001, a superseding indictment added five counts of engaging in a monetary transaction in criminally derived property under 18 U.S.C. § 1957. Among other things, the government alleged petitioner possessed material, nonpublic information related to the pending acquisition, and engaged in a fraudulent scheme to purchase call options.

The case was tried to a jury in October, 2001. Petitioner was represented by Jon Hopeman, an experienced trial lawyer and former

federal prosecutor.  At closing argument, the defense argued petitioner learned "worthless" information from the due diligence review, and explained the suspicious trades as "coincidence" -- that is, unrelated attempts to correct a margin imbalance in petitioner's brokerage account before the brokerage exercised self-help and sold off his stock.  See, e.g., T. vol. 8 at 48.

The government vigorously disputed this theory.  Responding to the suggestion that petitioner had only speculative, uncertain information, the prosecutor argued that an analysis by Goldman Sachs showed the acquisition was "going to increase profits," and that "Wall Street and the stock market loved" the deal.  T. vol. 8 at 10-11.  In support of the materiality of the information, the prosecutor pointed to a Lehman Brothers' report dated June 22 showing analysts "wanted to know about this transaction, and it was influencing their opinion of the stock."  Id. at 12-13.  Both analyst reports were introduced into evidence.  Govt. Trial Exs. 25, 32.  The government acknowledged on rebuttal that while some "people had serious reservations" about the acquisition, petitioner's option purchases indicated he did not share those reservations.  T. vol. 8 at 53- 54.

Similarly, the prosecutor argued the improbability of a margin imbalance requiring the sale of UnitedHealth stock the day after petitioner's return from the due diligence review.  Numerous brokerage statements, and the testimony of two brokerage employees,

were introduced into evidence.  Govt. Trial Exs. 36-42, 44-51, 53-61; T. vol. 3 at 171-185, vol. 4 at 3-53, vol. 6 at 12-30.  Based on this evidence, the prosecutor argued the brokerage had allowed the problem to continue for weeks without requiring petitioner to take any action, T. vol. 8 at 16-17, 56-58, and that, in any event, the sale did not solve the problem.  Id. at 18, 58.  He argued that petitioner might have solved a margin problem by other means, id. at 59, but that he had only one way to fund his May, 1995, call option purchase:  by selling stock.  Id. at 58.  The prosecutor termed call options "the most risky investment one can make" because they offered "the risk of losing it all."  Id. at 6.

   The government challenged petitioner's expert's conclusions and methodology.  The expert suggested the MetraHealth acquisition actually caused UnitedHealth's share price to decline in 1996; the prosecutor countered that the price dropped due to an industry-wide decline unrelated to the merger.  Id. at 55-56.  The expert also suggested petitioner had not profited from the trades.  In response, the prosecutor characterized the expert's analysis as "just plain wrong" because it used incorrect trade dates.  Id. at 52.

   After trial, on October 30, 2001, the jury convicted petitioner on all counts.  On August 21, 2002, the Court sentenced petitioner to 42 months in prison, assessed a $150,000 fine, and

4

required petitioner to forfeit $70,000.  The Court also imposed a three-year term of supervised release.

Petitioner moved for release pending appeal, which this Court denied.  S. at 21.  Petitioner timely appealed his conviction to the Eighth Circuit Court of Appeals, and began serving his sentence in October, 2002.  He twice moved the Eighth Circuit to release him pending appeal.  Each motion was denied.  Petitioner moved for release a third time shortly before the United States Supreme Court issued its opinion in Blakely v. Washington, 542 U.S. 296 (2004). The panel remanded the matter to this Court in light of Blakely, then vacated its order.  Petitioner moved for release a fourth time.  In October, 2004, the panel found this Court had jurisdiction over whether petitioner should be released, and dismissed petitioner's motion.  Petitioner renewed his motion before this Court, and the motion was granted on November 30, 2004 [Docket No. 124], after he had served 26 months of his original sentence.

On April 28, 2005, the Eighth Circuit panel affirmed petitioner's conviction.  United States v. Mooney, 401 F.3d 940, 942 (8th Cir. 2005).  Several months later, on October 10, 2005, the Eighth Circuit, en banc, considered and rejected petitioner's challenge to his sentence, this time premised on the Supreme Court's opinion in United States v. Booker, 543 U.S. 220 (2005), and once again affirmed the conviction.  United States v. Mooney,

5

425 F.3d 1093, 1095 (8th Cir. 2005). On January 11, 2006, this Court deferred resentencing pending the outcome of petitioner's request for certiorari. [Docket No. 128.]

On June 19, 2006, the Supreme Court denied petitioner's request for certiorari. Mooney v. United States, 547 U.S. 1208 (2006). On September 29, 2006, this Court denied petitioner's motion for resentencing, and ordered him to serve the remainder of his sentence commencing not later than October 30, 2006. [Docket No. 137].

This petition under 28 U.S.C. § 2255 was timely filed on June 13, 2007.

II. Analysis

Petitioner requests relief pursuant to 28 U.S.C. § 2255 on several grounds: insufficient evidence, prosecutorial misconduct, ineffective assistance of counsel, and the hardships imposed by his sentence. He also requests that counsel be appointed at government expense to represent him in this proceeding.

As an initial matter, there is no general right to counsel in post-conviction proceedings under section 2255. United States v. Craycraft, 167 F.3d 451, 455 (8th Cir. 1999). The Court declines to appoint counsel for petitioner here.

Turning to petitioner's substantive arguments, the Court, of course, may not consider those which were or could have been raised on direct appeal. Petitioner is precluded from raising issues

already considered on direct appeal. United States v. English, 998 F.2d 609, 612-13 (8th Cir. 1993). Petitioner has already sought and received the benefit of appellate review regarding the sufficiency of the evidence supporting his convictions. Mooney, 401 F.3d at 944-47. The Eighth Circuit found the evidence fully sufficient. Id. He is precluded from relitigating the issue here.

Further, section 2255 is not a means to raise matters that could have been litigated on direct appeal. United States v. Samuelson, 722 F.2d 425, 427 (8th Cir. 1983) (per curiam). Instances of alleged prosecutorial misconduct occurring in closing argument are routinely brought up on direct appeal. See, e.g., United States v. Yu, 484 F.3d 979, 986 (8th Cir. 2007); United States v. Palma, 473 F.3d 899, 902 (8th Cir. 2007). When claims of prosecutorial misconduct are known to the defendant and not raised on direct appeal, they provide no basis for post-conviction relief. See United States v. Little, 608 F.2d 296, 300 (8th Cir. 1979). Petitioner did not challenge the prosecutor's trial statements on direct appeal. Because he could have raised the issue then, he is precluded from doing so now. See Samuelson, 722 F.2d at 427.

In any event, the Court finds no prosecutorial misconduct. Prosecutorial remarks must be evaluated in the context of the entire argument and the evidence adduced at trial. Herrin v. United States, 349 F.3d 544, 546 (8th Cir. 2003). "So long as prosecutors do not stray from the evidence and the reasonable

inferences that may be drawn from it, they, no less than defense counsel, are free to use colorful and forceful language in their arguments to the jury." United States v. Mullins, 446 F.3d 750, 759 (8th Cir. 2006) (internal quotation omitted).  In addition, "fleeting comments that passed without objection during the rough-and-tumble of closing argument in the trial court should not be unduly magnified."  Id. at 758.  Further, petitioner must show prejudice - that is, that the prosecutor's improper comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  Id. at 757 (internal quotation omitted).

Petitioner takes issue with the government's attempt to undermine his theory of defense, arguing that many of the statements made in closing argument (as set forth above) are false. For example, petitioner argues that his purchase of call options was not, in fact, "the most risky investment," as the prosecutor claimed, because some of the options were already "in the money" when purchased.  Petitioner's Ex. 3, Trading Details Document, at 10.  Similarly, the prosecutor's argument that Wall Street "loved" the deal and believed it was "going to increase profits" was false according to petitioner, because some analysts did not love the deal, and it turned out that earnings per share did not increase. Pet. Ex. 4, False Statements, at 2-4.

Petitioner claims the government also made false statements about his margin account. In his view, there was not one continuing uncorrected margin problem, as the government claimed, but several smaller ones, which were corrected in due course. Pet. Ex. 3 at 7. Therefore he maintains, contrary to the government's argument, he had no alternative but to sell stock in mid-May to fix his margin problem. <u>Id.</u> at 6. Furthermore, he did not have to sell stock to purchase call options, as the government claimed, but could have raised the necessary funds by exercising employee stock options. <u>See</u> Pet. Ex. 4 at 1-2.

These arguments are unavailing. The evidence at trial showed petitioner dramatically increased his cash position by selling UnitedHealth stock after his participation in the due diligence review of the MetraHealth merger. As part of that review, he was given access to confidential information about the acquisition target. At trial, his counsel argued that he did not learn anything useful during the due diligence review, and his UnitedHealth trades were a happenstance designed to correct an imminent margin problem.

The prosecutor challenged these claims by emphasizing evidence tending to disprove them. The Eighth Circuit found this evidence "more than enough" for a reasonable jury to find that petitioner had obtained material nonpublic information about the merger, and

9

that his stock sale "had nothing to do with a margin call." Mooney, 401 F.3d at 945.

The government's statements are not false simply because petitioner prefers a different interpretation of the facts. The Court concludes that the government's closing argument was firmly based upon, and drew permissible inferences from, the evidence. There was no prosecutorial misconduct. Further, even if there had been, the Court repeatedly instructed the jury that the lawyers' arguments were not evidence. See T. vol. 1 at 4, vol. 8 at 3, 63.

Which brings the Court to petitioner's allegations of ineffective assistance of counsel. To prevail on such a claim, petitioner must show both that counsel's performance was deficient, and that he suffered actual prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner must show counsel's deficient performance rendered the proceedings fundamentally unfair or unreliable. El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993). When determining if prejudice exists, the Court considers all the evidence before the jury. Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). The Court "need not address the competency of counsel's performance if the prejudice issue is dispositive." Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998).

Petitioner claims trial counsel provided ineffective representation because he failed to object to or counter the

government's alleged false statements at closing argument.  The petitioner is flat wrong.  He was represented by a highly skilled and zealous advocate who fought the prosecution's case tooth and nail.  The fact that his lawyer did not object to arguments which the Court, above, finds proper, did not prejudice petitioner in any way.  See Herrin, 349 F.3d at 547.

Petitioner's other allegations of ineffective representation second-guess counsel's trial strategy.  He faults counsel for presenting "almost illegible" copies of the monthly statements from his margin account, and "confusing" testimony about the account.  Pet. Mem. Ex. 5, Ineffective, at 1-2.  He suggests that on cross-examination counsel should have attempted to show the government's witnesses' lack of understanding.  Id.  In petitioner's words, the "government got its information wrong on multiple issues and the defense should have shown that to the jury but didn't."  Id.

These cavils do not begin to rise to the level of ineffective representation.  This was a notably hard-fought case.  The standard is not whether counsel might improve one or another flyspeck in the trial's presentation, but whether counsel's representation as a whole deprived petitioner of a fair trial.  And this Court has no hesitation in stating that defense counsel gave petitioner a staunch, and very fair defense.

Petitioner was vigorously defended at every stage of his trial and appeal by experienced, competent counsel.  That being said, the

11

defense counsel's real problem was that the evidence against petitioner was more than fully sufficient to convict. Mooney, 401 F.3d at 945-46. As a result, petitioner cannot show he was prejudiced by any alleged defects in counsel's representation. See Evans v. United States, 200 F.3d 549, 551 (8th Cir. 2000). Petitioner's claims of ineffective assistance fail.

Finally, petitioner seeks modification of his sentence, asking the Court to reduce the three-year term of supervised release and eliminate the $150,000 fine so that he may use his resources to care for his seventy-three-year-old mother, who he claims has "limited income." Pet. Ex. 1, Grounds, at 2-3.

28 U.S.C. § 2255 affords relief only to prisoners claiming a right to be released from custody. United States v. Bernard, 351 F.3d 360, 361 (8th Cir. 2003). Like a challenge to a restitution order, see id., petitioner's challenge to his fine and supervised release do not invoke a "right to be released" from custody. As the relief he seeks lies beyond the scope of § 2255, the Court has no basis to grant the motion.

Even considering the merits, the Court finds no basis to revisit petitioner's sentence. The sentence was proper when imposed and has been affirmed by the Eighth Circuit. The Court declines to modify the conditions of petitioner's supervised release.

     The Court also notes that its permission to allow petitioner to proceed in forma pauperis on direct appeal is no reason to eliminate his $150,000 fine. The evidence at trial showed petitioner was responsible for a loss of $274,000. S. at 6. No restitution was imposed. Potential hardship to petitioner's family has already been taken into account. The government and petitioner agreed that the government would not seek forfeiture of any cash or gifts given by petitioner to family members. See petitioner's supplemental affidavit in support of application to proceed in forma pauperis [Docket No. 99] Ex. A. The Court declines to modify petitioner's fine.

The Court has also considered whether it is appropriate to issue a Certificate of Appealability ("COA"). See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). The Court concludes that no issue raised in this petition is "debatable among reasonable jurists." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991)). Petitioner has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## III. Conclusion

Accordingly, based on the files, records, and proceedings herein, IT IS ORDERED that:

1. Petitioner's motion for relief, pursuant to 28 U.S.C. § 2255 [Docket No. 138] is denied.

     2. No Certificate of Appealability will issue.

Dated:  May 9, 2008

                                        <u>s/ James M. Rosenbaum</u>
                                        JAMES M. ROSENBAUM
                                        United States Chief District Judge